ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
40 Wall Street, Suite 2833
New York, New York 10005
(212) 267-2101
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------X

MIROSLAW DABROWSKI on behalf of himself
and on behalf of all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | **Docket No.:** |
| -against- | **JURY TRIAL DEMANDED** |

PIAST MEATS & PROVISIONS, INC., PASSAIC
STREET PIAST CORP., MARIA RYBAK, MARIA
RYBAK as the Executrix of the Estate of HENRYK
RYBAK, and MARCIN RYBAK,

Defendants.

-----------------------------------------------------------------X

## **COMPLAINT**

Miroslaw Dabrowski ("Dabrowski"), on behalf of himself and on behalf of all others

similarly situated, by his attorneys, Robert Wisniewski P.C., as and for his Complaint against

Defendants Piast Meats & Provisions, Inc., Passaic Street Piast Corp. (collectively, the

"Corporate Defendants"), Maria Rybak ("Maria"), Maria Rybak as the Executrix of the Estate of

Henryk Rybak ("Henryk"), and Marcin Rybak ("Marcin") (collectively, the "Individual

Defendants") (Corporate Defendants and Individual Defendants are collectively referred to as

"Defendants"), states as follows:

## **NATURE OF THE ACTION**

1.      Plaintiff Dabrowski brings this action on behalf of himself and others similarly

situated to recover unpaid wages and overtime wages, liquidated damages, and reasonable

attorneys' fees under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et. seq.*) ("FLSA") (*see* **Exhibit 1**), 40 U.S.C. § 3142(a) (b), formerly 40 U.S.C. §§ 276a-276a-5, the common law of the State of New Jersey, and the New Jersey State Wage and Hour Law, N.J.S.A. 34:11, *et. seq.*, and regulations codified thereunder, including, but not limited to, N.J.S.A. 34:11-56a25 ("NJWHL").

2.      Defendants own and operate Piast Meats & Provisions ("Piast"), a gourmet Polish market with two (2) locations in Garfield, New Jersey. Piast specializes in the production and sale of house-made kielbasas, cold cuts, pierogis, and other Polish and European specialty foods.

3.      As part of Piast's business operations, Defendants maintain a production facility where Plaintiff and others similarly situated regularly worked well in excess of forty (40) hours per week but were only compensated for the first forty (40) hours of work per week.

4.      Plaintiff and others similarly situated were not paid at all for the additional hours nor were they paid at the premium overtime rate for all hours worked in excess of forty (40) per week.

## PARTIES, JURISDICTION AND VENUE

5.      At all relevant times, Plaintiff was and is a resident of the State of New Jersey, Bergen County.

6.      At all relevant times, Corporate Defendant Piast Meats & Provisions, Inc. was and is a domestic business corporation duly organized under, and existing by virtue of, the laws of the State of Jersey, and presently having its principal place of business at 800 River Drive Garfield, NJ 07302.

7.      At all relevant times, Corporate Defendant Passaic Street Piast Corp. was and is a domestic business corporation duly organized under, and existing by virtue of, the laws of the

2

State of Jersey, and presently having its principal place of business at 800 River Drive Garfield, NJ 07302.

8.      At all relevant times, Individual Defendant Maria was and is a resident of the State of New Jersey, Bergen County.

9.      At all relevant times, Maria Rybak, the Executrix of Individual Defendant Henryk, her recently deceased husband, was and is a resident of the State of New Jersey, Bergen County.

10.     At all relevant times, Individual Defendant Marcin, Maria and Henryk's son, was and is a resident of the State of New Jersey, Essex County.

11.     Individual Defendants are the owners, members, majority shareholders, officers, directors of the Corporate Defendants.

12.     This Court has personal jurisdiction over the Defendants in that they are citizens and residents of the State of New Jersey, and/or maintain their principal place of business in that State.

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under 29 U.S.C. § 207 (FLSA) and 28 U.S.C. §1337 (Regulation of Commerce). This Court has jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because those claims are related to Plaintiff's federal claims and form part of the same case or controversy.

14.     Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce in that the employees of said Defendants handle, sell or otherwise work on goods or materials that

have been moved in or produced for interstate commerce, such that Defendants are employers subject to the jurisdiction of the FLSA.

15.     This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. § 1391(b) because substantial events giving rise to Plaintiff's claims and claims of all others similarly situated occurred in this district.

## JURY DEMAND

16.     Plaintiff and others similarly situated demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

17.     Piast Meats & Provisions ("Piast") is a popular and successful family-owned Polish market in northern New Jersey. According to Defendants' website, Piast offers over 100 varieties of house-made kielbasa, hams, bacons, cold cuts, and artisan jerky as well as other specialty foods, including baked goods and imported grocery items.[1]

18.     Defendants retail Piast's products to the public from their two (2) store locations in Garfield, New Jersey, and on the internet.

19.     The physical locations of Defendants' stores are as follows:

    a.  the "River Drive Store," located at 800 River Dr. Garfield, NJ 07026, and

    b.  the "Passaic Street Store," located at 1 Passaic Street, Garfield, NJ 07026.

20.     Defendants' larger Passaic Street Store functions as the company flagship store and a banquet hall where Defendants offer catering services at Polish-style weddings, baptisms, birthday parties, and other events.

---

[1] https://www.piast.com/pages/story (last accessed April 7, 2021)

21.     Adjacent to Piast's Passaic Street Store, Defendants maintain a production facility which includes a butcher shop, a smokehouse, a bakery, and a kitchen (the "Production Facility") where Defendants' proprietary meat products and other edibles are made.

22.     Upon information and belief, Defendants employ at least forty (40) people, including cooks, cashiers, helpers, and butchers and meat cutters such as the Plaintiff, at Piast at any given time.

***Facts Relating to Plaintiff Dabrowski's Employment for Defendants***

23.     Plaintiff is a professional butcher with over forty (40) years of experience handling meat products in various butcher shops in Poland and the United States.

24.     In or about mid-October 2018, Plaintiff entered into an oral contract with Defendant Henryk, whereby he agreed to work as a full-time butcher and meat cutter at Defendants' Production Facility in exchange for a weekly wage of $750.00.

25.     At the time of hiring, Plaintiff did not discuss with Henryk how many hours he would work per week or the specific hourly rate at which Defendants would compensate him.

26.     Defendants did not furnish to Plaintiff any documents setting forth his rate of pay or advising him of his employee rights. Defendants never advised Plaintiff that the weekly wage they were paying him included overtime pay.

27.     Based on his discussion with Henryk, Plaintiff understood that the $750 weekly wage was to be for a forty (40) hour work week. Based on a simple calculation of dividing $750 by 40 hours, Plaintiff surmised that Defendants were going to compensate him at $18.50 per hour, which made perfect sense to Plaintiff as Plaintiff had been compensated at a rate of $15 per hour when he last worked as a butcher at a similar production facility in the United States ten (10) years before.

28.     Plaintiff worked for Defendants pursuant to their oral agreement from October 25, 2018 through March 6, 2021.

29.     Upon starting work, Plaintiff discovered that Defendants required him and all other non-managerial employees at the Production Facility to work substantially more hours than forty (40) per week.

30.     Specifically, Defendants required Plaintiff and others similarly situated to regularly work six (6) days a week, Monday through Friday, 6 a.m. to 4 p.m., (10 hours a day) and Saturdays, 6 a.m. to 2 p.m. (8 hours a day) for a total of fifty-eight (58) hours per week.

31.     Furthermore, on average once every month Defendants required their employees, including Plaintiff, to stay an extra hour or two beyond their regular workhours for which they did not compensate Plaintiff and others similarly situated at all.

32.     Further yet, during holiday seasons of Christmas and Easter, Defendants required employees to work Monday through Friday, 6 a.m. to 6 p.m., and Saturday and Sunday, 6 a.m. to 2 p.m. for a total of seventy-six (76) hours per week. Defendants compensated Plaintiff and others similarly for the extra eighteen (18) hours at the basic rate of approximately $12 to $19 per hour, which they paid by either cash, or a combination of cash and check.

33.     Plaintiff and others similarly situated worked Stakhanovite work hours without any break even though Defendants claimed a weekly allowance for employee meals on their paychecks.

34.     Upon realizing how much he had to work, Plaintiff approached Henryk to ask for a raise because he felt that $750 was inadequate compensation for the hours that Defendants required him to work.

35.     Plaintiff explained to Henryk that he was being compensated less per hour than when he last worked as a butcher ten (10) years before and that he was never compensated at the premium overtime rate for the hours he worked in excess of forty (40) hours a year.

36.     In response, Defendants raised Plaintiff's weekly wage to $800 per week in January 2019.

37.     Throughout the year 2019, Plaintiff continued to plead with Henryk for another raise, explaining that the hourly wage he was getting was still below the $15 per hour he had been getting ten (10) years earlier.

38.     In consideration of Plaintiff's complaints as to the actual rate of pay and his good work and successful introduction of new products into Defendants' cold-cut portfolio (headcheese, pate sausage, and various other pate sausages), Defendants raised Plaintiff's weekly wage three (3) more times:

      a.  In January 2020 – to $900 per week;

      b.  In approximately the fall of 2020 – to $1050 per week;

      c.  In January 2021 – to $1100 per week.

39.     To keep track of employee work hours, Defendants maintained a facial recognition terminal that Plaintiff and others similarly situated used to clock in and clock out at specific times.

40.     Throughout Plaintiff's employment, Defendants compensated Plaintiff weekly by a combination of a check and cash, with Saturday as the designated payday. Upon information and belief, Defendants perpetuated this scheme on all non-managerial employees.

41.     Each Saturday, Plaintiff and others similarly situated received their wages from Henryk, and after Henryk's death, from Marcin, in an envelope containing a check and some cash.

42.      The weekly checks that Plaintiff received from Defendants were issued by Passaic Piast and each contained a paystub stating a fictitious lower number of hours that Plaintiff purportedly worked as well as a fictitious lower wage rate reflecting the applicable New Jersey minimum wage rate:

  d.  $8.60 as of January 2018;

  e.  $10.00 as of January 2019;

  f.  $11.00 as of January 2020; and

  g.  $12.00 as of January 2021.

43.     Any cash remuneration that Plaintiff received was in the amount making up the difference between the fictitious wages purportedly earned by Plaintiff as stated on his check and his promised weekly wage. See ¶34-37 *supra.*

44.     Moreover, whenever Plaintiff and others similarly situated worked seventy-six (76) hours per week during the holiday seasons of Christmas and Easter, Defendants' checks and cash payments reflected the increased hours they worked such that they received the same hourly rate as when they worked fifty-eight (58) hours.

45.     Upon information and belief, Defendants compensated all of their non-managerial employees in the same improper manner as the Plaintiff.

46.     Plaintiff was terminated on March 6, 2021 by Marcin over a vacation request by Plaintiff.

***Facts Relating to Defendants' Willful Violations of Labor Laws***

8

47.     Defendants as employers have certain statutory obligations towards their employees, including paying employees for all of the hours they worked, paying the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of forty (40) per week, and making, keeping, and preserving proper payroll records.

48.     Plaintiff and others similarly situated have been Defendants' employees during the years immediately preceding the initiation of this action and have performed labor and services as defined by the FLSA, the NJWHL and the regulations promulgated by the United States Department of Labor's Wage and Hour Division, and New Jersey State's Department of Labor, but have not received the compensation required by the FLSA, the NJWHL and/or the common law of the state of New Jersey.

49.     Defendants were aware of their requirement to pay Plaintiff and others similarly situated for each hour worked and at a higher overtime premium of 150% of the applicable regular rate for each hour worked in excess of forty (40) hours per week.

50.     Nevertheless, Defendants failed to pay Plaintiff and others similarly situated their proper wages, including overtime wages.

51.     Plaintiff and others similarly situated regularly worked over forty (40) hours per week but were only paid for the first forty (40) hours that they worked. Additionally, Plaintiff and others similarly situated were not paid at the premium overtime rate of one-and-a-half times of their respective regular rates for the hours they worked in excess of forty (40) per week.

52.     Defendants were aware that Plaintiffs and others similarly situated were not paid the proper wages required under state and federal law.

53.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and NJWHL by failing to maintain proper payroll records and by

engaging in an elaborate scheme whereby they falsified their employees' true wage rates and the number of hours worked and issued bogus checks.

54.     At a minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

55.     As set forth above, the various violations of the law alleged herein were committed intentionally and willfully by Defendants.

***Facts Relating to the Defendants' Status as Joint Employers***

56.     At all relevant times herein, each Corporate Defendant was and is controlled by the Individual Defendants Maria, Henryk, and Marcin.

57.     At all relevant times herein, the Individual Defendants conducted business as each of the Corporate Defendants.

58.     At all relevant times herein, each Individual Defendant acted for and on behalf of the Corporate Defendants, with the power and authority vested in him as the owner, officer, agent, and employee of the Corporate Defendants, and acted in the course and scope of their duty and function as owner, agent, employee, and officer of the Corporate Defendants.

59.     At all relevant times herein, the Individual Defendants directly managed, handled, or was otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks to Plaintiff and others similarly situated.

60.     Each Corporate Defendant was an employer of the Plaintiff and others similarly situated because each Corporate Defendants was benefitted by their work.

61.     Each of the Individual Defendants had control over the conditions of employment of the Plaintiff and of others similarly situated., including their hiring and firing, work schedule, the rate and method of payment of wages, and the maintenance of employment records.

10

62.     Henryk and Maria, Piast's co-founders, and their son Marcin, a general manager, regularly issued work-related orders to Plaintiff. Each Tuesday at 8 a.m. Henryk, Maria, and Marcin held a meeting with their store managers.

63.     Henryk hired Plaintiff, served as the company president and regularly handed out weekly wages to Plaintiff and others similarly situated before his death.

64.     Upon Henryk's death, Maria took over as the company president and together with Marcin, continued to oversee Plaintiff's employment at Piast.

65.     At all relevant times herein, the Individual Defendants had operational control over the Corporate Defendants.

66.     As a matter of economic reality, all Defendants are joint employers of the Plaintiff and others similarly situated, and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

***Facts Relating to Piercing the Corporate Veil***

67.     Upon information and belief, both Corporate Defendants are wholly owned by the Individual Defendants.

68.     Upon information and belief, in conducting the affairs of the Corporate Defendants, the Individual Defendants failed to comply with the required corporate formalities, including recordkeeping, governance requirements, and other formalities.

69.     Upon information and belief, the Individual Defendants used the assets of the Corporate Defendants as their own and/or otherwise commingled personal assets with the assets of the Corporate Defendants.

70.     As alleged herein, the Individual Defendants used the Corporate Defendants in order to circumvent a statute or statutes or accomplish other wrongful acts or in furtherance of other wrongful or inequitable purposes.

71.     The Corporate Defendants are alter-egos of the Individual Defendants; and, as will be established at trial, for the purpose of the claims made by Plaintiff and others similarly situated, Corporate Defendants have no separate legal existence from the Individual Defendants. Accordingly, the Corporate Defendants and the Individual Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

***Corporate Defendants Constitute a Unified Operation***

72.     Upon information and belief, the Individual Defendants set up the Corporate Defendants to circumvent state and federal labor laws with respect to payment of employee wages.

73.     At all relevant times, the Corporate Defendants were operating as a unified operation and each provided mutually supportive services to the substantial advantage of the other such that each entity is operationally interdependent with each other.

74.     At all relevant times, the Corporate Defendants were owned, managed, and controlled by Individual Defendants.

75.     At all relevant times, Corporate Defendants have had a common principal place of business: 800 River Drive Garfield, NJ 07302.

76.     At all relevant times, Corporate Defendants shared employees, administrative personnel, tools, goods produced for their mutual benefit, and other costs of doing business.

77.     As set forth above, Corporate Defendants were alter egos of each other such that they did not have separate existence from each other and must be treated as a single enterprise.

## COLLECTIVE ACTION ALLEGATIONS

78.     Plaintiff brings this action on behalf of himself and all other persons who were or are employed by Defendants and performed work, labor and services but did not receive the compensation required by the FLSA and the federal wage orders codified in 29 C.F.R. § 552 *et. seq.* with respect to their work for Defendants.

79.     Upon information and belief, this class of persons consists of not less than 40 persons.

80.     There are questions of law and fact common to the class specifically whether the employment of the Plaintiff by the Defendants is subject to the jurisdiction and the wage and overtime requirements of the FLSA and the federal wage orders codified in 29 C.F.R. § 552 *et. seq.* Only the amount of individual damages sustained by each class member will vary.

81.     Plaintiff and Defendants' other employees are similarly situated insofar as Defendants instituted a policy not to pay their employees proper minimum and overtime wages under the FLSA.

82.     Plaintiff brings the first claim for relief herein on behalf of himself individually and all persons similarly situated as a collective action pursuant to the FLSA, with respect to all claims that Plaintiff and all persons similarly situated have against the Defendants as a result of Defendants' violations under the FLSA and the federal wage orders codified in 29 C.F.R. § 552 *et. seq.*

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this action on behalf of himself and all other persons who were or are employed by Defendants in non-executive and non-managerial positions as butchers, laborers, cooks, bakers, and others, and performed work, physical labor and services but did not

13

receive the compensation required by the NJWHL and the common law of the State of New Jersey.

84.     Upon information and belief, this class of persons consists of not less than 40 persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23 (a)(1).

85.     There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically: whether the employment of the Plaintiff and others similarly situated by Defendants is subject to the jurisdiction and the wage and overtime requirements of the NJWHL and the common law of New Jersey and whether Plaintiff and others similarly situated suffered from Defendants' policy or plan not to pay proper overtime wages. Only the amount of individual damages sustained by each class member will vary.

86.     The claims of the Plaintiff are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

87.     Plaintiff will fairly and adequately protect the interests of the members of the class, in that his interests are not adverse to the interests of the other members of the class.

88.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

89.     The Plaintiff brings the second, third, and fourth claims for relief herein on behalf of himself individually and all persons similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23, in respect to all claims that Plaintiff and all persons similarly situated

14

have against the Defendants as a result of Defendants' violations under the NJWHL and the common law of the State of New Jersey.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

90.     Plaintiff repeats and realleges each and every allegation as previously set forth.

91.     Plaintiff agreed to perform work and services as a full-time butcher and meat cutter at Defendants' Production Facility in exchange for compensation in the form of a weekly wage which Plaintiff understood covered forty (40) hours of work.

92.     Plaintiff satisfactorily supplied labor in connection with, and in furtherance of, the work required under his employment contract with the Defendants and in doing so, complied with the terms of her employment agreement with the Defendants, and was therefore entitled to wages he rightfully earned while working for the Defendants.

93.     Defendants failed or refused to pay Plaintiff the wages to which he was entitled under his employment agreement with Defendants.

94.     Defendants' failure or refusal to pay Plaintiff the wages to which he was entitled under his employment agreement with the Defendants constitutes a breach of his employment agreement with the Defendants.

95.     That by virtue of the foregoing breach of contract by Defendants, Plaintiff has been damaged in an amount to be proven at trial based upon an accounting of the amount Plaintiff should have been paid as contemplated by her employment agreement with the Defendants, less amounts actually paid to the Plaintiff, together with an award of interest, costs, disbursements, and attorneys' fees.

15

## SECOND CLAIM FOR RELIEF
### (Quantum Meruit)

96.     Plaintiff repeats and realleges each and every allegation previously set forth.

97.     Plaintiff performed work and services as a butcher and meat cutter at Defendants'
Production Facility

98.     Plaintiff had a reasonable expectation of payment for the hours he worked for the
Defendants, but Defendants failed to remunerate Plaintiff for all the hours he worked.

99.     Plaintiff was entitled to payment for the unpaid hours she worked for the
Defendant at a rate which constitutes the reasonable value of his services, less amounts actually
paid to Plaintiff, together with an award of interest, costs, disbursements, and attorneys' fees.

## THIRD CLAIM FOR RELIEF
### (NJWHL)

100.     Plaintiff repeats and realleges each and every allegation as previously set forth.

101.     Pursuant to N.J.S.A.34:11-56a4, 34:11-56a 25 as well as other provisions of the
New Jersey law and wage orders issued thereunder, Plaintiff and others similarly situated were
entitled to certain overtime wages, and other wages, all of which the Defendants intentionally
failed to pay in violation of such laws.

102.     Wherefore Plaintiff and others similarly situated seek a judgment against all
Defendants for all wages which should have been paid, but were not paid, pursuant to the
NJWHL; the total amount of such unpaid wages to be determined at trial upon an accounting of
the hours worked by, and wages paid to, the Plaintiff and other similarly situated, along with an
award of attorneys' fees, interest and costs as provided under N.J.S.A. 34:11-56.8 and other
relevant laws and regulations.

## FOURTH CLAIM FOR RELIEF
### (FLSA)

103.    Plaintiff repeats and realleges each and every allegation previously set forth.

104.    Plaintiff and other employees of Defendants are persons covered by, and/or intended to benefit from, the provisions of the FLSA in respect to their work for Defendants.

105.    Pursuant to the FLSA, Plaintiff and others similarly situated were entitled to certain minimum and overtime wages, which Defendants intentionally and willfully failed to pay in violation of such laws.

106.    Plaintiff and others similarly situated regularly worked in excess of forty (40) hours per week for Defendants, but they did not receive any compensation for such work, to which they were entitled.

107.    Accordingly, Plaintiff and others similarly situated seek a judgment for unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiff and others similarly situated, along with an award of liquidated damages, interest, attorneys' fees, and costs, as provided for by the FLSA.

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiff and others similarly situated demand a trial by jury and judgment against the Defendants as follows:

a.    Compensatory damages in an amount to be determined at trial;

b.    Liquidated damages pursuant to FLSA and the NJWHL;

c.    Costs and reasonable attorney's fees;

d.    Pre-judgment interest; and

17

e.      Back pay and front pay, and all benefits to which Plaintiff and others

similarly situated are entitled

Together with such other and further relief that the Court deems just.

Dated: New York, New York
       May 1, 2021

ROBERT WISNIEWSKI P.C.

By: */s/ Robert Wisniewski*
Robert Wisniewski
40 Wall Street, Suite 2833
New York, New York 10005
Tel.: (212) 267-2101
*Attorneys for Plaintiff*

18